[No. 756.]

WELLS, FARGO & CO., APPELLANTS, *v.* R. P. DAYTON, RESPONDENT.

WHEN INJUNCTION WILL NOT ISSUE TO RESTRAIN COLLECTION OF TAXES.—No court of equity will allow its injunction to issue to restrain the collection of a tax, except when actually necessary to protect the rights of citizens who have no plain, speedy and adequate remedy at law.

IDEM.—Before an injunction will be granted, it must appear that the enforcement of the tax would lead to a multiplicity of suits, or produce irreparable injury, or, if the property is real estate, throw a cloud upon the title of complainant, or there must be some allegation of fraud.

IDEM—INSOLVENCY OF ASSESSOR.—The mere allegation of the insolvency of the assessor is not sufficient to authorize the court to grant an injunction to restrain the collection of a tax.

IDEM—PAYMENT OF TAX—REMEDY AT LAW.—*Held*, that the complainant in this case had an adequate remedy at law. If the taxes are paid under protest and the county received the money, it could have brought its action against the county, and if the tax was illegal, could have recovered the money back.

APPEAL from the District Court of the Seventh Judicial District, Lincoln County.

The facts are stated in the opinion.

*Ellis & King*, for appellant.

I. Injunction in a case of this character is a recognized remedy, and indeed the only remedy to prevent irreparable injury. To prevent a multiplicity of suits—a sale of the property to sundry purchasers and its conversion upon a tax unlawful in toto—it is alleged that the assessor and collector are unable to respond in damages. (15 Wallace, 317, 318; Hilliard on Taxation, 469, § 74; *State* v. *Atkins*, 35 Ga. 315; *Masterson* v. *Hoyt*, 55 Barb. 520; *Indianapolis* v. *Gilmore*, 30 Ind. 414; *Vanover* v. *Davis*, 27 Ga. 354; *Olmstead* v. *Board of Supervisors*, 24 Iowa, 33; 18 Md. 284; 29 Penn. 121; Hilliard, secs. 78, 81, 86, 96, 99, 100; 15 Wis. 11.)

*A. B. Hunt*, also for Appellant.

I. A court of equity will restrain by injunction a tax illegally levied. (*Burnett* v. *Cincinnati*, 3 Ohio, 88; *Ottawa* v. *Walker*, 21 Ill. 605; *Adams* v. *Castle*, 30 Conn. 404.)

*George Goldthwaite*, for Respondent.

I. If the tax of which appellant complains is illegal, which is the only question before the court, the respondent is a trespasser. (*Ritter* v. *Patch*, 12 Cal. 299; *Susquehana Bank* v. *Supervisors of Broome County*, 25 N. Y. 314, 315.)

II. If the respondent is a trespasser, appellant has a complete remedy at law. (*Leach* v. *Day*, 27 Cal. 645; *Ritter* v. *Patch*, 12 Cal. 299.)

III. Conceding tax illegal, it does not necessarily follow that appellant is entitled to injunction. (*Savs. Loan Society* v. *Austin*, 46 Cal. 488, 489.)

IV. This is not a case for equity to interfere, as the wrong complained of may be fully compensated in damages,

which can be easily ascertained, and it is not shown that a judgment at law cannot be satisfied by execution. (*Conley* v. *Chedic,* 6 Nev. 224.)

V. While the complaint attempts to set up irreparable damages, there is not sufficient in the facts stated to satisfy the court that the apprehension of such injury is well-founded. (*Branch Turnpike Co.* v. *Board of Supervisors Yuba Co.* 13 Cal. 190; *Dewitt* v. *Hays,* 2 Cal. 463.)

VI. The complaint of appellant confesses that the proceedings of respondent are legal, and does not allege that his bondsmen are unable to respond in damages, and fails to show wherein appellant is injured, or that he has not a remedy at law. (*Merrill* v. *Gorham,* 6 Cal. 41; *Leach* v. *Day,* 27 Cal. 27; *Phelps* v. *Peabody,* 7 Cal. 30; *Dewitt* v. *Hays,* 2 Cal. 463.)

*T. W. W. Davies,* also for Respondent.

I. If the proceedings complained of are *void,* equity of course will not interfere. And irregularities or errors occurring in the assessment of a tax, or in the execution of the powers conferred upon taxing officers, present no sufficient case for equitable interposition—the remedy at law being adequate and sufficient. (*Dana* v. *Chicago,* 11 Wall. N. J. 108; *Heyward* v. *Buffalo,* 14 N. Y. 534; *Warden* v. *Supervisors,* 14 Wis. 618; *Kellogg* v. *Oshosh,* Id. 623; *Brewer* v. *Springfield,* 97 Mass. 152; *O'Neal* v. *Maryland and Virginia Bridge Co.,* 18 Md. 1; *Clinton School District Case,* 56 Penn. St. 317; *C. & W. R. Co.* v. *Black,* 32 Ind. 471, *Green* v. *Mumford,* 5 R. I. 472; *Jones* v. *Sumner,* 27 Ind. 512; *C. B. & Q. R. R. Co.* v. *Fray,* 22 Ill. 34; *Merritt et al.* v. *Farris,* Id. 303; *Munson* v. *Minor,* Id. 601; *Exchange Bank* v. *Hines,* 3 Ohio St. 37.)

II. This is a suit against the defendant as the county assessor of Lincoln county, who is a bonded officer; the bond required being not less than five thousand dollars, and it is nowhere alleged that the sureties on the assessor's bond are insolvent, or not fully able to answer in money to the extent of the alleged damage. (*Exchange Bank* v. *Hines,* 3 Ohio St. 37; *De Witt et al.* v. *Hays,* 2 Cal. 463; *Cowell* v.

*Doub*, 12 Id. 273; *Ritter* v. *Patch*, Id. 298; *Turnpike Co.* v. *Supervisors*, 13 Id. 190; *Kelsey* v. *Trustees of Nevada*, 18 Id. 629; *Leach* v. *Day*, 27 Id. 645; *Terry* v. *Jackson*, 4 John. Ch. 352; 6 Johnson's Chancery, 19; 2 Dallas, 405; 9 Gill & John. 408.)

III. If the assessment is unequal and unjust, relief will be afforded by the board of equalization; and if illegal, the injured party has his action at law against the offending officer as a trespasser, and his bondsmen. (*Macklot* v. *City of Davenport*, 17 Iowa, 385; *Warden et al.* v. *Supervisors*, 14 Wis. 618; *Merrill* v. *Gorham*, 6 Cal. 41; *Fall* v. *City of Marysville*, 19 Id. 393; *Guy* v. *Washburn*, 23 Id. 113; *People* v. *Arguello*, 37 Id. 524; *Exchange Bank* v. *Hines*, 3 Ohio St. 37; *Thompson* v. *Com. Can. Fund*, 2 Abb. Pr. R. 347; *Hasbrouck* v. *K. Board of Health*, 3 Keyes N. Y. 484; *M. L. Ins. Co.* v. *Supervisors*, Id. 182; *Mesick* v. *Supervisors*, 50 Barb. 191; *Mayor of Brooklyn* v. *Meserole*, 26 Wend. 138; *Van Dorn* v. *Mayor of New York*, 9 Paige Ch. 387; *Wilson* v. *Mayor of New York*, 4 E. D. Smith, 673; *Chem. Bank* v. *Mayor of New York*, 1 Abb. Pr. R. 80; *N. Y. L. Ins. Co.* v. *New York*, Id. 250; *Livingston* v. *Hollenbeck*, 4 Barb. 16; *Van Rensalaer* v. *Kidd*, 4 Id. 18; *Thatcher* v. *Dusenberry,*, 9 How. Pr. R. 33; Thompson on Prov. Rem. 250; 1 Van Santvoord's Eq. Pr. 347.)

By the Court, HAWLEY, C. J.:

The complainant filed a bill in equity to enjoin the collection of a tax alleging, that complainant is a non-resident of the State of Nevada; that defendant is county assessor of Lincoln county; that as such assessor he assessed the office furniture and fixtures of complainant at the sum of $700, and "money secured by mortgage" at $40,636.58; that the different parcels of real estate mortgaged were assessed at more than the full value regardless of the mortgages held by complainant; that said mortgages are of record in the recorder's office of Lincoln county; that complainant offered and tendered to defendant as county assessor the amount of taxes due on the assessment of office fixtures, to-wit, $29.40; that the property mortgaged would not sell at forced sale

for more than $20,100, and that the mortgagors are insolvent; that complainant is ready and willing and offers to pay and discharge the taxes assessed against the real estate to the several mortgagors whenever the same shall become due and payable; that defendant refuses to accept the tax on said office furniture; that to require complainant to pay the taxes as levied on said mortgages, and also to require the property described in said mortgages, to pay the full taxes already levied upon it, will in effect be to require said complainant to pay a double tax; that complainant is and was assessed for the same fiscal year on its personal property, capital stock and effects, of which said mortgages and the money secured to be paid by the same is a part, in the Territory of Colorado; that said defendant as assessor of Lincoln county, without due or any process of law whatever, seized, and now threatens to sell and unless restrained and enjoined, will sell, the office fixtures of complainant for the tax as assessed and levied by him to complainant on said mortgages and office fixtures to satisfy said tax amounting to $1706.73; that complainant has no speedy or adequate remedy at law; that should defendant sell said fixtures complainant will be greatly and irreparably damaged and injured, and that said defendant is wholly unable to respond in damages. Complainant therefore prays that defendant be forever restrained and enjoined from in any manner meddling or interfering with or disposing of the office fixtures of complainant.

To this bill the defendant interposed a demurrer upon two grounds: "First. That it appears upon the face of the said complaint that this court has not jurisdiction; Second. The complaint does not state facts sufficient to constitute a cause of action." This demurrer was sustained, and complainant failing to amend, judgment was entered in favor of defendant for costs. Complainant appeals. The first question presented by the record is that of jurisdiction. Assuming the tax to be illegal and void, is there any ground presented in the bill that justifies the interposition of a court of equity to enjoin the tax levied upon the money secured by mortgage?

The general principle is well settled by the weight of reason

and a decided preponderance of authorities that no court of equity will ever allow its injunction to issue to restrain the collection of a tax, except where it is actually necessary to protect the rights of citizens who have no plain, speedy and adequate remedy at law. It has been so decided in this court. (*Conley* v. *Chedic,* 6 Nev. 223.) It must, in the language of the authorities, appear that the enforcement of the tax would lead to a multiplicity of suits, or produce irreparable injury; or, if the property is real estate, throw a cloud upon the title of the complainant, or there must be some allegation of fraud, before the aid of a court of equity can be invoked. There must in every case be some special circumstances attending a threatened injury of this kind, which distinguishes it from a common trespass, and brings the case under some recognized head of equity jurisdiction, before the extraordinary and preventive remedy of injunction can be invoked.

The necessity of strictly adhering to this rule is obvious. The legislature is invested with the sole power of providing the modes by which state and county taxes shall be levied, assessed and collected, and it is essential that the modes prescribed, if within constitutional limits, should be faithfully carried out by the officers to whom is intrusted the duty of their enforcement. The state and county governments are dependent for their support upon the taxes imposed upon the property of their citizens, and experience and observation teaches us that the payment of taxes has very often to be enforced by summary and stringent means against the adverse sentiment and persistent resistance of the taxpayers.

Under the revenue laws of this state if the owner of any property refuses to make a statement under oath of all real estate or personal property within the county, "owned, claimed by, or on deposit with, or in the possession or control of such person," the assessor "shall make an estimate of the value of such property, and assess the same accordingly." (2 Comp. L. 3130.) The assessor and his sureties are liable for the taxes on all taxable property within his county, which is not assessed through his willful neglect.

(2 Comp. L. 3131.)  When he assesses the property of any person or persons, company or corporations, liable to taxation, who do not own real estate within the county," it is made his duty to "immediately collect the taxes on the personal property so assessed, and if such person or persons, company or corporations, shall neglect or refuse to pay such taxes, the assessor, or his deputy, shall seize sufficient of the personal property of the person or persons, company or corporations, so neglecting or refusing to pay, to satisfy the taxes and costs," and proceed to sell the same pursuant to the provisions of the statute. (2 Comp. L. 3149.)

With such collections courts of equity ought never to interfere unless the bill clearly shows that complainant is likely to suffer some great or irreparable injury from the acts of the officer, and further shows that he has no plain, speedy or adequate remedy at law.

The question under review has often been presented to the courts of New York.  As early as 1822, in the case of *Mooers* v. *Smedley*, where a bill was filed to enjoin the collector of a town from collecting a tax, on the ground that the supervisors had levied the same in direct violation of law, Chancellor Kent said: "I cannot find by any statute or precedent, or practice, that it belongs to the jurisdiction of chancery, as a court of equity, to review or control the determination of the supervisors;" that the review and correction of errors, mistakes and abuses of the officers in the exercise of their duties "has always been a matter of legal, and never a matter of equitable cognizance," and that "in the whole history of the English court of chancery, there is no instance of the assertion of such a jurisdiction as is now contended for." (6 John. ch. 28.)

These views of the learned chancellor were quoted with approval by Nelson, C. J., in the court of errors in the case of *The Mayor of Brooklyn* v. *Meserole*, 26 Wend. 138; and the principles therein announced have ever since been generally followed by the various courts of that state. (*Van Doren* v. *Mayor of New York*, 9 Paige, ch. 390; *Thompson* v. *The Commissioners of the Canal Fund*, 2 Abb. Pr. 251; *Wilson* v. *The Mayor of New York*, 4 E. D. Smith, 675; *Mes-*

*seck* v. *The Board of Supervisors of Columbia County,* 50 Barb. 190; *Heywood* v. *City of Buffalo,* 14 N. Y. 538; *Hasbrouck* v. *Kingston Board of Health,* 3 Keyes, 482.)

The same question has been frequently decided in the Supreme Court of the United States.

In *Dows* v. *The City of Chicago,* Field, J., in delivering the opinion of the court said: "It is upon taxation that the several states chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible. Any delay in the proceedings of the officers, upon whom the duty is devolved of collecting the taxes, may derange the operations of government, and thereby cause serious detriment to the public. No court of equity will, therefore, allow its injunction to issue to restrain their action, except where it may be necessary to protect the rights of the citizen whose property is taxed, and he has no adequate remedy by the ordinary processes of the law." (11 Wal. 110.)

In *Hannewinkle* v. *Georgetown,* Hunt, J., in delivering the opinion of the court affirming the doctrine as announced in *Dows* v. *The City of Chicago,* said: "It has been the settled law of the country for a great many years, that an injunction bill to restrain the collection of a tax, on the sole ground of the illegality of the tax, cannot be maintained. There must be an allegation of fraud; that it creates a cloud upon the title; that there is apprehension of multiplicity of suits, or some cause presenting a case of equity jurisdiction." (15 Wal. 548.)

In the recent decision by the same court in the case of *Taylor* v. *Secor,* and other cases published in the *Chicago Legal News* of April 29, 1876, Miller, J., after reviewing the previous decisions upon this question, said: "We do not propose to lay down in these cases any absolute limitation of the powers of a court of equity in restraining the collection of illegal taxes, but we may say in addition to illegality, hardship, or irregularity the case must be brought within some of the recognized foundations of equitable jurisdiction, and that mere errors or mistakes in valuation, or hardship

or injustice of the law, *or any grievance which can be remedied by a suit at law*, either before or after payment of taxes, will not justify a court of equity to interpose by injunction to stay collection of a tax."

This case does not, in our judgment, come within any of the exceptions to the general rule.   There is no pretense that a multiplicity of suits would be avoided and no question of a cloud upon title to real estate is involved.   There is no allegation of fraud, nor any other proper averment which brings the case under any head of equity jurisdiction.   It is true the bill alleges that complainant has no speedy or adequate remedy at law and that it will be irreparably injured by the sale of its office fixtures.   These allegations are wholly insufficient.   The facts must be stated so that the court can judge whether the averments are true.   In this case the allegations are based solely upon the alleged fact that the assessor is insolvent.   But in this respect we do not think the bill states sufficient facts to authorize a court of equity to interfere.   (*Ritter* v. *Patch*, 12 Cal. 299; *Branch Turnpike Company* v. *Board of Supervisors of Yuba County*, 13 Id. 190.)

The assessor, in assessing and attempting to enforce the payment of the tax, was pursuing the identical course indicated by the statutes of this state, and all his acts were within the line of his official duties as prescribed by law. His sureties are responsible upon his official bond for any damages that might accrue in consequence of any of his official acts, and it is nowhere alleged that they are insolvent.   Moreover, if the taxes had been paid under protest, and the county had received the money, complainant could have brought its action against the county, and if the tax was illegal, could have recovered the money back.   In the language of the Supreme Court of Connecticut: "It is difficult to see why he has not adequate remedy at law.   There is no averment that the real estate of any of the parties has been or can be levied upon.   The warrant authorizes the taking of personal estate only.   No irreparable injury can arise from the levy.   If the proceedings   *   *   *   are irregular and void, as the petitioners claim they are, an

action at law will lie to recover all the damages which shall be sustained by the levy, and the question of the legality of the assessment will then be tried in its appropriate forum, a court of law." (*Dodd* v. *City of Hartford*, 25 Conn. 238.)

In the case of *The County of Cook* v. *The Chicago, Burlington and Quincy Railroad Company*, which was a suit in chancery, instituted by the railroad company against the county of Cook and its treasurer to restrain the collection of a tax assessed by the board of supervisors of said county upon the rolling stock of the company, the bill alleged that the levy of the tax was illegal and unjust; that complainant had been once taxed on said property, and had paid the taxes thereon, and that it was not liable to be again taxed. The court, after deciding that a court of equity had no jurisdiction in such a case, say: "Ordinarily, a party of whom a tax is illegally collected has an ample remedy at law, by an action of trespass against the officer collecting it, or by an action of assumpsit to recover back the money paid. In the case under consideration, if the tax was an illegal one, the appellee, after paying it, could have brought his action against the county and recovered the money back." (35 Ill. 466.)

To the same effect is the language of the court in *Dows* v. *The City of Chicago, supra*: "If the tax was illegal, the plaintiff, protesting against its enforcement, might have had his action, after it was paid, against the officer or the city, to recover back the money, or he might have prosecuted either for his damages. No irreparable injury would have followed to him from its collection. Nor would he have been compelled to resort to a multiplicity of suits to determine his rights. His entire claim might have been embraced in a single action."

In *Brewer* v. *City of Springfield*, which was a suit in equity to enjoin the collection of a tax which the bill alleged had been illegally assessed, Bigelow, C. J., in delivering the opinion of the court, said: "Until the plaintiffs have been compelled to pay the tax which they allege to have been illegally assessed upon them, they have suffered no

wrong; when they have paid it they can recover it back by an action at law, which would furnish them an adequate and complete remedy. We can see no ground on which a single taxpayer, who has been illegally assessed, can ask for the interference of a court of equity." (97 Mass. 154.)

These views are conclusive of this case. We therefore express no opinion upon the questions whether complainant was liable to be taxed on the money secured by mortgage, it being as alleged a non-resident of the state, or whether the tax as levied was a double tax. It will be time enough to decide these questions when they are properly presented for review.

The judgment of the district court is affirmed.