**NAMPA & MERIDIAN IRR. DIST. v. BOND, Project Manager, U. S. Reclamation Service (PAYETTE–BOISE WATER USERS' ASS'N, Limited, Intervener.)**

(Circuit Court of Appeals, Ninth Circuit. April 2, 1923. Rehearing Denied May 14, 1923.)

No. 3967.

Waters and water courses ⬅222—Necessary drainage expense chargeable as "operating expense" against users.

Under Reclamation Act June 17, 1902, § 4 (Comp. St. § 4703), and Act Aug. 13, 1914, §§ 4, 5 (Comp. St. §§ 4713d, 4713e), the Secretary of the Interior has authority to provide for drainage as part of an extensive irrigation project in order to prevent damage to property from the operation of the irrigation system, and his determination that the expense of necessary drainage for the prevention of future injuries is a proper operation, and maintenance charge to be assessed against the users is controlling; the term "operating expense," when applied to an irrigation system, including all damages to persons or property that may result from operation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Operating Expenses.]

Appeal from the District Court of the United States for the Southern Division of the District of Idaho; Frank S. Dietrich, Judge.

Suit in equity for injunction by the Nampa & Meridian Irrigation District against J. B. Bond, Project Manager of the Boise Project of the United States Reclamation Service, to restrain the defendant from withholding the delivery of water for failure to pay operation and maintenance charges, in which the Payette-Boise Water Users' Association, Limited, intervened. From a judgment of dismissal and final decree (283 Fed. 569), plaintiff appeals. Affirmed.

Section 4 of the Reclamation Act of June 17, 1902 (32 Stat. 388 [Comp. St. § 4703]), provides:

"That upon the determination by the Secretary of the Interior that any irrigation project is practicable, he may cause to be let contracts for the construction of the same, in such portions or sections as it may be practicable to construct and complete as parts of the whole project, providing the necessary funds for such portions or sections are available in the reclamation fund, and thereupon he shall give public notice of the lands irrigable under such project, and limit of area per entry, which limit shall represent the acreage which, in the opinion of the Secretary, may be reasonably required for the support of a family upon the lands in question; also of the charges which shall be made per acre upon the said entries, and upon lands in private ownership which may be irrigated by the waters of the said irrigation project, and the number of annual installments, not exceeding ten, in which such charges shall be paid and the time when such payments shall commence."

Section 4 of the amendatory act of August 13, 1914 (38 Stat. 687 [Comp. St. § 4713d]), provides:

"That no increase in the construction charges shall hereafter be made, after the same have been fixed by public notice, except by agreement between the Secretary of the Interior and a majority of the water-right applicants and entrymen to be affected by such increase, whereupon all water-right applicants and entrymen in the area proposed to be affected by the increased charge shall become subject thereto. Such increase charge shall be added to the construction charge and payment thereof distributed over the remaining unpaid installments of construction charges."

Section 5 of the latter act (Comp. St. § 4713e) provides further:

"That in addition to the construction charge, every water-right applicant, entryman, or landowner under or upon a reclamation project shall also pay,

whenever water service is available for the irrigation of his land, an operation and maintenance charge based upon the total cost of operation and maintenance of the project, or each separate unit thereof, and such charge shall be made for each acre-foot of water delivered."

The plaintiff in this suit is an irrigation district organized under the general laws of the state of Idaho. A part of the land in the district has a water right, or partial water right, from the district, or from other private sources, while other irrigable land in the district has no such water right. The former are classed as old water-right lands, and the latter as project lands. On the 1st day of June, 1915, the plaintiff entered into a contract with the United States to provide a drainage system for the district and to procure additional water. Under the terms of this contract the government agreed to construct the drainage system at a cost of $557,000, a fixed proportion of which was charged against the old water-right lands, and the balance against the project lands of the Boise project, both within and without the district. Paragraph 12 of this contract contains the following provision:

"The project lands in the district shall pay the same operation and maintenance charge per acre as announced by the Secretary of the Interior for similar lands of the Boise project and the same shall be collected by the district for the United States and paid over by the district to the United States, and upon notices from the officer of the United States in charge of the Boise project, the district will withhold the delivery of water from such project lands in the district as are in default in the payment of said operation and maintenance charge."

On the 15th day of February, 1921, the Secretary of the Interior made public announcement of the annual operation and maintenance charge for drainage in the Boise project for the irrigation season of 1921, fixing the charge for maintenance and operation as follows:

"(a) A regular operation and maintenance charge to be hereafter announced in the usual manner to cover all costs of operation and maintenance other than drainage.

"(b) A special operation and maintenance charge for drainage purposes of one dollar ($1.00) per irrigable acre per year until further notice, to become due and payable (50) cents per irrigable acre on April 1, 1921, and fifty (50) cents per irrigable acre on October 1, 1921, and fifty (50) cents per irrigable acre on March 1st and October 1st of each year thereafter until further notice, the money received from such special operation and maintenance charge to be used after the same has been paid in to the United States, in providing drainage on the Boise project to minimize or prevent as far as possible the swamping and waterlogging of the lower lying lands of the project by seepage from the irrigation of the higher lands and by seepage from the irrigation system of the project, to lessen the damage which would otherwise result from the operation of said canal system and to maintain the irrigability of the lands of the project, said drainage charge to be considered a part of the minimum operation and maintenance charge per irrigable acre, the remainder of said minimum charge per acre and all charges per acre-foot of water used in excess of the amounts of water allowed for such minimum charge to be hereafter announced and determined by public notices to be hereafter issued from time to time."

The present suit was instituted by the district to restrain the project manager from withholding the delivery of water for failure to pay the charge for operation and maintenance as announced by the Secretary of the Interior. The court below sustained a motion to dismiss, and from the final decree the plaintiff has appealed.

Hugh E. McElroy, of Boise, Idaho, for appellant.

E. G. Davis, U. S. Atty., and B. E. Stoutemyer, both of Boise, Idaho, for appellee Bond.

Eldridge & Morgan, of Boise, Idaho, for appellee Payette-Boise Water Users' Ass'n, Limited.

Before GILBERT and RUDKIN, Circuit Judges, and VAN FLEET, District Judge.

RUDKIN, Circuit Judge (after stating the facts as above). While conceding that the Secretary of the Interior has authority to provide for drainage under the Reclamation Act, the appellant insists that such provision must be made as a part of the original construction cost, or by agreement with a majority of the landowners affected under the act of 1914, and that the cost of drainage cannot be included in the maintenance and operation charge. The appellee, on the other hand, contends that it is a proper maintenance and operation charge, and that, in any event, under the terms of its contract with the United States, the appellant is bound by the act of the Secretary in fixing the maintenance and operation charge for the Boise project. There is force in this latter contention, but we prefer to rest our decision on broader grounds. While indefinite, the term "operating expense" is a broad and comprehensive one, and its meaning in a given case depends on the nature and amount of the expenditure, and all the surrounding circumstances. As said by the court in Schmidt v. Louisville C. & L. Ry. Co., 119 Ky. 287, 302, 84 S. W. 314, 318:

"There is no rule of law declaring what constitutes operating expenses. That is to be determined by the testimony as to each item of expenditure. It is a matter of evidence, and determinable like any other fact."

The situation confronting the Reclamation Service was this: The necessity for drainage follows irrigation on an extensive scale almost as a matter of course. It cannot be determined in advance with any degree of certainty when drainage will be required, or its cost or extent when required. If not provided for in advance, as was the case here, it can only be provided for by agreement with a majority of the landowners affected, or by a maintenance and operation charge. The prosecution of the present suit gives little promise that the necessary consent could be obtained, but the power of the Secretary to conserve and protect the property under his charge is not dependent upon any such consent. It has been almost universally held that damages to person or property resulting from operation is a proper operating expense, and, had injury resulted to crops or other property from the operation of this system, compensation for such injury would fall within the most restricted meaning of that term.

Furthermore, the power of the Secretary does not stop at reparation for past injuries. It extends to the prevention of future injuries as well, and if, in the exercise of the broad discretion vested in him, the Secretary deems it advisable to incur expense to prevent future losses rather than make reparation after the losses have been incurred, a court of equity will not review his discretion. In other words, the expense of preventing injury by seepage resulting from operation is a proper operation charge, or, at least, the determination of the Secretary of the Interior to that effect is controlling upon the courts.

The decree of the court below is therefore affirmed.