[No. 17293. Department Two. May 4, 1923.]

# J. R. LAYCOCK et al., Respondents, v. LAKE CHELAN RECLAMATION DISTRICT et al., Appellants.[1]

WATERS (92)—IRRIGATION DISTRICTS—ASSESSMENTS — POWERS OF OFFICERS—STATUTES. Under Rem. Comp. Stat., § 7436, requiring irrigation assessments to be made in proportion to the benefits, an irrigation district has no power to levy an assessment of $110 per acre on all lands in the district, and to credit the same amount to all stockholders of a corporation that had conveyed its water rights to the district, as the value of the rights transferred by such corporation and stockholders, leaving the assessment to stand only against landowners who had not held and surrendered stock or water rights.

SAME (92). Rem. Comp. Stat., § 7428, giving irrigation directors power "generally to perform all such acts as shall be necessary to fully carry out the provisions of this chapter," confers no power on the directors to levy an assessment not authorized by law.

SAME (92). Since irrigation assessments must be made in accordance with the benefits received, the directors have no power to levy an assessment of $10 per acre upon all the land in the district for maintenance purposes, which was arrived at "by fixing the maximum that the people would be able to pay"; nor can a levy for maintenance purposes include any money to be used for construction purposes.

SAME (92) — ASSESSMENTS — REMEDIES OF LANDOWNER. Equity will entertain a landowner's action to cancel void irrigation assessments, there being no provision in the law providing any other remedy and making it exclusive.

Appeal from a judgment of the superior court for Chelan county, Grimshaw, J., entered October 29, 1921, in favor of the plaintiff, in an action for equitable relief, tried to the court. Affirmed.

*Charles R. Sargent* and *Bronson, Robinson & Jones,* for appellants.

*Carroll B. Graves* and *Barrows & Hanna,* for respondents.

[1] Reported in 214 Pac. 1054.

MAIN, C. J.—The plaintiffs brought this action to have excluded from an irrigation district certain land owned by them therein, and also for the purpose of having assessments levied thereon by the district canceled and declared to be void. The cause was tried to the court without a jury, and resulted in a judgment denying the right to have the land excluded, but canceling the assessments complained of. From this judgment, the defendants appeal.

The Lake Chelan Reclamation District (which will be referred to as though it were the only appellant) is a corporation organized under the law of this state which provides for the creation of irrigation districts and defines their power and the method of operation. The appellant district was organized in the fall of 1919 for the purpose of taking over a private water system by which most of the land now within the district was to be supplied with water for irrigation. In order to have a better understanding of the situation it will be necessary to go into the previous history a little. The Lake Chelan Land Company, a corporation, formerly owned practically all of the irrigable land in the district, and also the water rights for the irrigation thereof. That company constructed an irrigation system, and subsequently formed the Lake Chelan Water Company, a corporation, to take over the ownership and management of the system. The land company conveyed to the water company the physical system, together with water rights, in return for the entire capital stock of the water company. Each share of stock in the latter company was made appurtenant to an acre of land to be irrigated, thus providing for each acre of the Lake Chelan Land Company under the water system a water right entitling it to a specified amount of water per annum. Land

18—124 WASH.

was purchased from the land company by various persons, and along with it each received the ownership of appurtenant stock in the water company. Subsequently the owners of the land and the water rights appurtenant thereto concluded to form an irrigation district embracing substantially the same land watered by the water company system. The respondents' land was included within the district, but there was no water right appurtenant thereto, as it had been purchased from the land company without such right and they held no stock in the water company.

On May 4, 1920, after the appellant district was organized, the water company conveyed to the district the entire water system, and the deed of conveyance recites that the stockholders of the water company, who were the landowners who had appurtenant water rights, had unanimously, by resolution, authorized and directed the conveyance of all the assets of the water company to the irrigation district. On June 1, 1920, the directors of the irrigation district passed a resolution to the effect that the value of the full water right under the irrigation district was $110 per acre, plus bond issues and assessments; that all lands having such right be credited with the value thereof, namely, $110 per acre; and that any lands in the district not having a water right, which would be the respondents' lands, should pay to the district $110 per acre. This amounted, in other words, to an assessment of $110 per acre upon all the land and a credit for an equal amount on each assessment, except that made to the respondents. In the fall of 1920, the board levied an assessment of $10 an acre upon all the land within the district, to cover interest upon bonds, maintenance charges, and so forth, for the ensuing year. The assessment roll covering the expenses for 1921 was

made up by the secretary of the district and filed with the board, which thereafter approved it, the respondents having appeared and protested against the assessment.

The first question is whether the board of directors had any power to make the $110 assessment. None of the landowners of the district, at the time this assessment was made and credited to all the landowners except the respondents, owned any water rights other than their right to receive water from the district; because, as already stated, the rights which had previously been acquired from the private company had been conveyed to the district. The board of directors, in effect, said that, since the other landowners of the district had previously owned a water right which they had conveyed to the district, and since the respondents had not previously owned a water right under the private system, which, in the judgment of the board, was of the value of $110 per acre, the respondents should pay that sum to the district.

For the making of such assessment we find no authority in the statute under which the district was organized and operated. Chapter IV, title XLVIII, Rem. Comp. Stat., § 7436, of that chapter provides, among other things, that assessments made in order to carry out "the purposes of this act shall be made in proportion to the benefits accruing to the lands assessed and equitable credit shall be given to the lands having a partial or full water right. . . ." The owners of land within the district, other than the respondents, did not have a partial or full right because they had previously conveyed it to the district without any provision or limitation. The assessment made against the respondents was not on the basis of benefits, but, as above stated, was for the purpose of requiring the respondents to pay an amount which,

in the judgment of the board, was the equivalent of the value of a previous water right appurtenant to other lands within the district.

As sustaining the right of the directors to make this assessment, our attention is called to Rem. Comp. Stat., § 7428, by which the directors are given power "generally to perform all such acts as shall be necessary to fully carry out the provisions of this chapter;" but that statute does not cover the situation. Power is there given to the directors to do such acts as shall be necessary to carry out the provisions of the law. The act of the directors here in controversy is something which is beyond the provisions of the law and beyond the power of the directors. The case of *Stevens v. Melville*, 52 Utah 524, 175 Pac. 602, does not present the same question as here involved, and therefore is not an authority sustaining the action of the board of directors in making the assessment.

The next question has to do with the $10 assessment. The trial court was right in holding that this assessment was void. From the section of the statute above referred to, all assessments are required to be made in accordance with benefits; and it is upon that theory that the courts sustain the right to make local assessments. This assessment, as appears from the testimony of the secretary of the district, was not made on the basis of benefits. In response to a question as to how the $10 assessment was arrived at, the secretary stated, "Because that was the amount the board seemed to feel was the maximum that the people would be able to pay." Another objection is that this assessment was levied not only for the purpose of paying interest and operating expenses, but also for certain construction purposes. The law makes no provision for raising money in this manner for the latter, that is, construction purposes. The assessment, as just

stated, was for the purpose of raising money for interest, operating expenses and construction purposes.

The last question is whether the respondents had a right to maintain an action in equity to cancel these assessments. There is no provision in the law providing any other remedy and making it exclusive. It is the rule in this state that courts have the power by injunction to restrain the enforcement of an illegal tax upon real property and remove the apparent lien created by an invalid• levy or assessment. *Northwestern Lumber Co. v. Chehalis County*, 24 Wash. 626, 64 Pac. 787; *Spokane & Inland Empire R. Co. v. Spokane County*, 82 Wash. 24, 143 Pac. 307.

The judgment will be affirmed.

FULLERTON, PARKER, and TOLMAN, JJ., concur.