NAMPA & MERIDIAN IRRIGATION DISTRICT *v.* BOND, PROJECT MANAGER, ET AL.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 135.  Argued March 6, 1925.—Decided April 13, 1925.

1. When an irrigation system has been completed under the Reclamation Act, subsequent construction of a drainage system to remove injurious consequences of its normal operation on the lands included is chargeable to maintenance and operation rather than to construction, and § 4 of the Reclamation Extension Act, preventing increase of construction charges when once fixed except by agreement between the Secretary of the Interior and a majority of water-right applicants and entrymen affected, does not apply. P. 53.

2. This is consistent with attributing to construction the cost of drainage provided for in the original plan because the need for it was existent or foreseen.  P. 54.

3. Where lands of an Idaho irrigation district were included in a federal reclamation project under a contract obliging the Government to furnish water and construct drainage works within the district, which was done and the cost assessed as a construction

charge against all the project water users, the district agreeing that the project lands in the district should pay the same operation and maintenance charge per acre as announced by the Secretary of the Interior for similar lands of the project, *Held* that the project lands within the district were liable with the other project lands to bear, as an operation and maintenance charge, the cost of providing drainage for project lands outside the district which were being ruined by seepage water from the operation of the irrigation system. P. 53.

283 Fed. 569; 288 *id.* 541, affirmed.

APPEAL from a decree of the Circuit Court of Appeals affirming a decree of the District Court which dismissed a bill by which the Irrigation District sought to enjoin an official of the federal Reclamation Service and a water users' association from withholding water from lands within the District for nonpayment of maintenance and operation charges.

Messrs. *H. E. McElroy* and *Will R. King* for appellant. *Mr. Fremont Wood* was also on the brief.

Mr. *W. W. Dyar*, Special Assistant to the Attorney General, with whom the *Solicitor General* and *Assistant Attorney General Ira K. Wells* were on the brief, for Bond.

Mr. *J. D. Eldridge* for Payette-Boise Water Users' Association, Ltd.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

Appellant is an irrigation district organized as a public corporation under the laws of Idaho. In 1915, its supply of water being insufficient to irrigate the lands of all its members, it entered into a contract with the United States, at that time engaged in the construction of the Boise irrigation project, for water to irrigate the unsupplied lands and for the construction of a drainage system

within the district. The district undertook to represent these lands in their relations to the government and collect from their owners and pay over to the government construction installments and operation and maintenance charges. The drainage system was constructed in accordance with the contract and the cost thereof, after deducting the amount chargeable to the old water right non-project lands within the district, was paid by the United States as a construction expense and, with other costs of construction, was charged ratably against all the project lands, being 40,000 acres within and 100,000 acres outside the district. After the construction cost, including this drainage, had been fixed by the government, it became necessary to drain project lands outside the district because they were being ruined for agricultural uses by the steadily rising ground level of seepage water due directly to the operation of the irrigation system. Thereupon, the Secretary of the Interior authorized the construction of a drainage system for these lands, the cost to be charged to operation and maintenance, and to be borne ratably by all the water users upon project lands both within and without the district. Appellant contended that this expenditure was not properly chargeable to operation and maintenance but was an additional charge for construction, which appellant could not be required to collect and pay over under § 4 of the Reclamation Extension Act of August 13, 1914, c. 247, 38 Stat. 686, 687, which provides that no increase in construction charges shall be made after the same have been fixed except by agreement between the Secretary of the Interior and a majority of the water right applicants and entrymen to be affected thereby. It was insisted further that appellant would be precluded by state law from collecting the charges from owners of non-project lands, because they were not benefited. The government having threatened that unless the charges were paid it would shut off the sup-

ply of water from the project lands within the district, appellant brought this suit to enjoin such action. The federal district court dismissed the bill, 283 Fed. 569; and its decree was affirmed by the circuit court of appeals. 288 Fed. 541. Both courts held that the cost was a proper charge as an operating expense and that the project lands in the district were liable for their proportionate part.

The contract with the district, among other things, provides: " The project lands in the district shall pay the same operation and maintenance charge per acre as announced by the Secretary of the Interior for similar lands of the Boise Project. . . ." We agree with the courts below that the charge in question fairly comes within this provision.

Section 4 of the Reclamation Extension Act, *supra,* prevents an increase in the *construction* charges to be imposed upon the water users without the consent of a majority of them after the amount thereof has been fixed. But this is far from saying that, after the completion of the irrigation system in accordance with the original plan in respect of which the construction charges were fixed, should the need arise to remedy conditions brought about by the *use* of the system, the government must bear the expense if a majority of the water users withhold their consent. Expenditures necessary to construct an irrigation system and put it in condition to furnish and properly to distribute a supply of water are chargeable to construction; but when the irrigation system is completed, expenditures made to maintain it as an efficient going concern and to operate it effectively to the end for which it was designed, are, at least generally, maintenance and operating expenses. The expenditure in question was not for extensions to new lands or for changes in or additions to the system made necessary by faulty original construction in violation of contractual or statutory obligations, *Twin Falls Co.* v. *Caldwell,* 272 Fed. 356, 369;

266 U. S. 85, but was for the purpose of overcoming injurious consequences arising from the normal and ordinary operation of the completed plant which, so far as appears, was itself well constructed. The fact that the need of drainage for the district lands, already existing or foreseen, had been supplied and the cost thereof charged to all the water users as a part of the original *construction,* by no means compels the conclusion that an expenditure of the same character, the necessity for which subsequently developed as an incident of operation, is not a proper *operating* charge. The same kind of work under one set of facts may be chargeable to construction and under a different set of facts may be chargeable to maintenance and operation. See *Schmidt* v. *Louisville C. & L. Ry. Co.,* 119 Ky. 287, 301–302. For example, headgates originally placed are charged properly to construction; but it does not follow that if an original headgate be swept away, its replacement, though requiring exactly the same kind of materials and work, may not be charged to operation and maintenance.

Appellant says the lands within the district are not benefited by the drainage in question; and, if a direct and immediate benefit be meant that is quite true. But it is not necessary that each expenditure for maintenance or operation considered by itself shall directly benefit every water user in order that he may be called upon to pay his proportionate part of the cost. If the expenditure of today does not especially benefit him, that of yesterday has done so or that of tomorrow will do so. The irrigation system is a unit, to be, and intended to be, operated and maintained by the use of a common fund to which all the lands under the system are required to contribute ratably without regard to benefits specifically and directly received from each detail to which the fund is from time to time devoted.

This conclusion, we think, fairly accords with the principle established by the supreme court of the state in

*Colburn* v. *Wilson*, 24 Ida. 94, 104; and we see no merit in the contention that under the state law a ratable part of the cost of this drainage cannot be assessed by the district upon the project lands within its limits because they are not benefited thereby. The cost of draining the district project lands was met by a charge imposed in part and proportionately upon the lands in the project outside the district. If now, when the latter need like protection, the district lands are called upon to assume an equivalent obligation, it requires no stretch of the realities to see, following from such an equitable adjustment, a benefit on the whole shared by both classes of lands alike. But in any event, since we find that the expenditure in question properly is chargeable to operation and maintenance, appellant is liable under the express terms of its contract.

*Decree affirmed.*