HERBERT PENROSE ET AL., FOR THEIR OWN USE AND BENEFIT AND FOR THE USE AND BENEFIT OF ALL OTHERS SIMILARLY SITUATE, RESPONDENTS, v. WALTER WHITACRE, AS TREASURER AND EX OFFICIO TAX RECEIVER IN AND FOR THE COUNTY OF LYON, STATE OF NEVADA, AND WALKER RIVER IRRIGATION DISTRICT, APPELLANTS.

No. 3367

October 29, 1943.

*W. M. Kearney* and *Robert T. Adams*, both of Reno, for Appellant, Walker River Irrigation District.

*Franklin H. Koehler*, of Yerington, for Appellant Walter Whitacre.

*John R. Ross*, of Carson City, for Respondent.

*Per Curiam:*

Good cause appearing therefor, it is hereby ordered that appellants' petition for rehearing heretofore filed in the above-entitled cause be, and the same is hereby, granted. The time for the oral argument on such rehearing is hereby set for Wednesday, the 8th day of December 1943, at the hour of ten o'clock a. m.

ON REHEARING

April 12, 1944. 147 P. (2d) 887.

W. M. *Kearney*, of Reno, for Appellant Walker River Irrigation District.

*Franklin H. Koehler*, of Yerington, for Appellant Walter Whitacre.

*John R. Ross*, of Carson City, for Respondents.

## OPINION

By the Court, TABER, J.:

The last sentence of sec. 49½ of the irrigation district act, sec. 8066 N. C. L. 1929, reads: "All the

provisions of this act where applicable shall apply to such improvement districts." It is the contention of appellants that this provision makes each improvement district a complete irrigation district in itself, with each, every and all of the powers vested in the board to do each, every and all the acts which the main district is authorized to do. Whether this position is correct depends largely upon the meaning of the words "where applicable." In endeavoring to ascertain the true intent of the legislature, courts look to established rules of statutory construction. One of these is that where one statute adopts such provisions of another "as are applicable," the court, in determining what provisions are applicable, must construe into the adopting statute only such appropriate provisions of the prior act as will give force and effect to the later act; also that the latter adopts nothing of the statute referred to beyond the purposes of the new act. In re Garrett Transfer & Storage Co., 53 Idaho 200, 23 P. 2d 739; In re Womelsdorf Alley, 8 Pa. Co. Ct. R. 207; State v. Board of Com'rs, 83 Kan. 199, 110 P. 92; Gadd v. McGuire, 69 Cal. App. 347, 231 P. 754; State v. Wendt, 225 Wis. 10, 273 N. W. 72; II Lewis' Sutherland on Statutory Construction, 2d ed., sec. 405, pp. 787–789; Crawford's Statutory Construction, sec. 234, p. 440; 59 C. J., Statutes, sec. 624, pp. 1059, 1060, note 23; 25 R. C. L., Statutes, sec. 160, p. 908, note 11. It is reasonable to suppose that when the legislature undertakes to legislate specifically on a subject, it does so fully, and cannot be deemed to have incorporated into the law parts of a former law unless the language employed is such as to indicate with a reasonable degree of certainty that such was the legislative intention. State v. Wendt, 225 Wis. 10, 273 N. W. 72; State v. Frear, 144 Wis. 79, 128 N. W. 1068, 140 Am. St. Rep. 992; 59 C. J. Statutes, sec. 624, p. 1060, note 24; 25 R. C. L., Statutes, sec. 160, p. 908, note 10.

■ Had the legislature intended that the board of

directors should have all the powers concerning improvement districts that it has concerning the irrigation district, it would have been a simple matter so to provide. This was done in the California irrigation district improvement act of 1927, Deering's General Laws of California 1937, Volume One, Act 3877A, sec. 10 of which reads in part as follows: "Said board of directors and all other officers of said irrigation district shall have all the rights, powers and privileges concerning said improvement district, and lands thereof and the proceedings herein provided for, as such board may have concerning the irrigation district, of which it is a part * * *." There is no such statutory provision in this state; and while it is possible that the legislature may have intended that the last sentence of sec. 49½, sec. 8066 N. C. L. 1929, should have the same meaning as sec. 10 of said California act, the language used in the former provision does not indicate with reasonable certainty that such was the intent.

A further reason why the court does not think that the proviso in sec. 14, sec. 8025 N. C. L. 1929, is applicable to improvement districts is the amount of the aggregate debt limit prescribed therein for irrigation districts. It seems unreasonable to think that the legislature would prescribe as high an aggregate debt limit for each improvement district as that prescribed for the whole irrigation district. It may be contended, however, that there is no reason why the dollar per acre debt limit should not apply to each improvement district as well as to the irrigation district; but there is at least one reason why the court does not consider this argument sound. If it were sound, the board of directors could always put an assessment of $1 per acre on lands in an improvement district containing less than thirty thousand acres, but could not make an assessment in that amount on the lands of an irrigation district containing more than thirty thousand acres. In other words, in an improvement district containing

15,000 acres the board of directors could, without a special election, assess as high as $15,000, while in an irrigation district containing 60,000 acres the highest legal assessment, without such election, would be $30,000. In one case the assessment could be as high as $1 per acre, while in the other it could not be higher than 50 cents per acre. Such a construction would mean that the statute in this respect gives the board of directors of an irrigation district not only as much, but more power concerning improvement districts than concerning the irrigation district as a whole.

■ Appellants insist that this court arrived at an erroneous conclusion in holding that plaintiffs were entitled to invoke the aid of equity without first applying for relief to board of correction. This matter was fully briefed and orally argued, and correctly disposed of in the original opinion, where the pertinent section of the act is quoted in full. Section 8037 N. C. L. 1929. From the provisions of that section it will be noted that the board of correction is authorized to "correct assessments so as to conform with the benefits apportioned as herein provided for to pay obligations incurred or make up deficiencies arising from any source, and also to apportion and distribute benefits and assessments by reason of additional land in the district becoming subject thereto * * *." Said section further authorizes the board to make such changes in the assessment book "as may be necessary to have it conform to the facts." The statute does not give the board of correction power to decide whether an assessment is void. Payette-Oregon Slope Irr. Dist. v. Coughanour, 162 Or. 458, 91 P. 2d 526; 48 Am. Jur., Special or Local Assessments, sec. 296, p. 783; 67 C. J., Waters, sec. 960, note 81.

■■ Reasserting their contention that injunction is not a proper remedy in the present case, appellants say that the following statement in Wells, Fargo & Co. v. Dayton, 11 Nev. 161, at page 166, is merely dictum insofar as it refers to cloud on title: "It must, in the

language of the authorities, appear that the enforcement of the tax would lead to a multiplicity of suits, or produce irreparable injury; or, if the property is real estate, throw a cloud upon the title of the complainant, or there must be some allegation of fraud, before the aid of a court of equity can be invoked." Whether dictum or not, it is sound law and supported by the authorities. Yocum v. First Nat. Bank, 144 Ind. 272, 43 N. E. 231 (citing Wells, Fargo & Co. v. Dayton, supra); Laycock v. Lake Chelan Reclamation District, 124 Wash. 544, 214 P. 1054; Annotation, 22 L. R. A. 699, at page 705 (citing Wells, Fargo & Co. v. Dayton, supra). If plaintiffs had an adequate remedy at law, cloud on title would not justify injunctive relief, but as they have no adequate remedy at law, injunction will lie if the assessment is illegal. 61 C. J., Taxation, sec. 1437.

█ In the official 1939–40 budget of the irrigation district and the four local improvement districts under the heading "Local Improvement District No. 2" we find this item: "Operation & Maintenance: Rate: $0.18 per acre." Appellants contend that the assessment complained of by plaintiffs was thus established as an operation and maintenance assessment which the board of directors of the improvement district had the right and power to levy. This court, they say, has entirely overloked the officially established purpose of the 18-cent assessment.

Said contention, though not discussed in the original opinion, was not overlooked. If the purpose of the assessment was not for operating and maintenance expense, the wording of an item in the official budget would not make it so. In the resolution of August 5, 1938, mentioned in the original opinion, we find the words "particularly for the purpose of the payment of the expenses and costs in the construction of a drainage canal in Local Improvement District No. 2 * * *." The same words occur in the resolution adopted by the

state board of irrigation district bond commissioners on August 31, 1938. The testimony of Mr. Bernard, Mr. Parker and Mr. Wichman shows beyond a doubt that while some of the money to be raised by the assessment was to be used in operating and maintaining the drainage canal, its chief purposes were (1) to raise money with which to repay to the irrigation district the $3,681.30 advanced pursuant to its agreement with the U. S. reclamation bureau and (2) to raise money to be used in completing the canal.

 This court does not question the soundness of the rules laid down in the Nampa case. Nampa & Meridian Irr. Dist. v. Bond, D. C., 283 F. 569; Id., 9 Cir., 288 F. 541; Id., 268 U. S. 50, 45 S. Ct. 383, 69 L. Ed. 843. But the courts in that case were not dealing with such statutory provisions as secs. 49½ and 14 of our irrigation district act. Besides this, in the Nampa case the construction work on the reclamation project had been completed and the project in operation for a considerable length of time. In the case at bar the construction work on the canal was not completed, and was done under a contract of the irrigation district with the reclamation bureau, without its ever having been authorized by a vote of two-thirds of the electors in the improvement district as required by sec. 49½. Conceding that if the injurious condition in improvement district No. 2 existed in the irrigation district as a whole the board of directors could, by virtue of the proviso in sec. 14 and other statutory provisions relied upon by appellants, legally incur the expense required to relieve such condition without a special election, it is the opinion of the court that, without such election as provided in sec. 49½, the board of directors could not legally assess the lands in the improvement district alone for the purpose of raising money to repay the $3,681.30 advanced by the irrigation district, or to cover the cost of completing the drainage canal. As a general rule, statutes providing for special or local assessments are to be strictly construed and strictly

applied in favor of the owners of the property assessed, and against the assessing authority. 48 Am. Jur., Special or Local Assessments, sec. 4, notes 2, 3. It being the opinion of the court that sec. 14 of the irrigation district act does not apply to improvement districts, we think that what was said by this court in Re Walker River Irr. Dist., 44 Nev. 321, 195 P. 327, 330, is applicable here: "The power to incur any debt or liability is not unlimited, but is expressly restricted to revenue sufficient to meet the obligations voluntarily assumed by the landowners within the district, as voiced by their votes at elections held for that purpose." Whether further legislation should be enacted conferring upon the board of directors larger powers concerning improvement districts and, as in some other states, specially providing for the remedying of injurious conditions such as and similar to those in the instant case, is a matter for the consideration of the legislative department.

· All the trouble in this case might have been avoided if a special election under sec. 49½ had been called when it was first learned that the help of the reclamation bureau was available. There was some apprehension that unless the offer of that bureau were immediately taken advantage of, its assistance might be lost. There is no evidence that Mr. Foster, or anyone else authorized to speak for the reclamation bureau, stated that it would not wait until a special election had been held. Even if the bureau had refused to wait for such an election, the board of directors of the irrigation district could at least have caused one to be held as soon as the necessary statutory proceedings would permit. But instead of following this procedure, the board of directors of the irrigation district entered into the contract with the reclamation bureau, and the work proceeded, without any steps being initiated until the summer of 1937 to secure the approval of two-thirds of the qualified electors of the improvement district. The election was not held until February 1938, about the

time the reclamation bureau ran out of funds. Even then, the election fell only two votes short of being carried by the required two-thirds majority.

In the Nampa case it appeared that the injurious condition was the direct result of the operation of the whole irrigating system. It was therefore held that all the lands in plaintiff irrigation district, as well as those in other parts of the project, should bear the expense of remedying the situation. If in the present case the waterlogging has resulted from the general system of irrigation in the irrigation district, then all its lands should be assessed to cover the expense of what has been done, as well as the cost of completing the canal. If, in the judgment of the board of directors, it was proper that the cost of constructing the drainage canal should be borne entirely by the lands in improvement district No. 2, it was necessary that two-thirds of the qualified electors give their approval through an election called and held as provided in sec. 49½ before a valid assessment could be levied on those lands only to cover the cost of such construction. As the assessment complained of in this case was made without holding such an election, it was void.

With reference to the question of estoppel the court, after further consideration, is still of the opinion that this case falls within the general rule that landowners will not be estopped from attacking a void assessment sought to be levied on their lands. In addition to the authorities in support of this rule cited in the original opinion, reference is also made to 48 Am. Jur., Special or Local Assessments, sec. 296.

The court adheres to its former decision herein, and the judgment and order appealed from are affirmed.