[No. 3315. July 17, 1928. Rehearing Denied
Aug. 30, 1928.]

SPERRY et al. v. ELEPHANT BUTTE IRR. DIST.
OF NEW MEXICO et al.

[270 Pac. 889.]

Holt & Holt and R. L. Young, all of Las Cruces, for appellants.

Mechem & Newell, of Las Vegas, and J. O. Seth, of Santa Fe, for appellees.

OPINION OF THE COURT

WATSON, J. On June 30, 1927, the board of directtors of the Elephant Butte irrigation district met to "estimate and determine the amount of funds required to meet the obligations and needs of the district for the ensuing year." Laws 1921, c. 39, § 3. The estimates made would require a tax upon the lands within the district subject thereto, amounting to $1.70 per acre for item 3 of the section just cited ("the portion of the expenses of operation and maintenance of the irrigation and drainage systems to be collected by tax assessment and levy * * *"), and a further tax of 15 cents per acre for item 4 of that section ("current and miscellaneous expenses, other than as above specified, and necessary to defray the expenses of maintaining the organization of the district and carrying out the purposes of this act"), which latter item the statute provides "shall not aggregate more than 20 cents per acre."

Numerous owners of lands within the district, alleging the invalidity of various items in the budget, and that, if those items were excluded, available funds would be sufficient for the purposes of the district for the ensuing year (1928), sought to enjoin the proposed tax levies. Plaintiffs have appealed from the overruling of the greater portion of their contentions.

The principal controversy grows out of the fact that the board included, on the "obligations and needs" side of "item 3," called "operation and maintenance fund," the sum of $205,000, estimated by it as the cost of operating and maintaining the irrigation and drainage system in 1928; it being the contention of appellants that such

cost was not an "obligation" or "need" of the district for 1928; that contention being based upon the claim that the district would not be called upon actually to pay out the money until 1929.

Under a contract made in 1918 between the district, acting through its board of directors, and the United States government, acting through the Secretary of the Interior, the government undertook to continue the operation of the Rio Grande reclamation project, "subject, however, to appropriation for such maintenance and operation work being made by Congress," and the district agreed to repay, annually, to the government, as rent, such part of the cost of operation and maintenance incurred by the government as should be apportioned to the New Mexico portion of the lands served, plus 10 per cent. The date for the payment of such rent is specified both in the contract and in the Reclamation Extension Act of August 13, 1914 (38 Stat. 686, § 6), as a date to be fixed by the Secretary of the Interior. The $205,000, to which objection is made, is the board's estimate of the amount of such rent for the year 1928.

In March, 1927, pursuant to a practice of some years' standing, the Secretary of the Interior promulgated his "public notice," estimating the amount of the rental for 1927 at $195,000, and requiring that the same be paid in two equal installments, March 1, 1928, and September 1, 1928, with three months' grace as to each payment. Up to the time this suit was commenced no "public notice" had been given by the Secretary as to the rental for 1928.

Upon these facts appellants have contended that the amount estimated to cover the cost to be incurred in 1928 had not become "obligations and needs" of the district, and was not a "payment to accrue" during said year. The statute of New Mexico under which the board derives its powers is chapter 20 of the Laws of 1919, as amended by chapter 39 of the Laws of 1921. Appellants contend that the proposed levy is violative of that statute. The board contends that its estimate was, if not required by the statute, at least within the discretionary powers given

it by the statute, and, to sustain the exercise of such discretion, points to this finding of the trial court:

"That the board of directors entered into negotiations with the Secretary of the Interior with the view of entering into a new contract for the repayment to the United States of the construction charges due the United States, which contract would, in the opinion of the board, be advantageous to the land owners of the district; that the board is advised and believes that under the law in order to enter into a new construction contract that the district must be in the financial position to pay the operation and maintenance costs in advance."

Appellants rely particularly upon two statutory expressions. The one is found in section 21 as amended, and requires that the board meet annually and "estimate and determine the amount of funds required to meet the obligations and needs of the district for the ensuing year." The other is found in section 13, as amended, and makes it "the duty of the board of directors to include as part of any levy or assessment now provided for by law, an amount sufficient to meet each year all payments accruing under the terms of any such contract." Both are of general application to all estimates and tax levies.

As we understand appellants' contention, it is that these expressions are so restrictive as to exclude from the board's estimates and from the resulting tax levies any amount, unless the board is prepared to show that it will actually and surely be required for disbursement during that year. In view of the court's finding, appellants are also driven to the position that the opinion of the board that such disbursement will probably be required is not a sufficient showing. If such was the intention of the Legislature, it results that, whenever owners of lands within the district see fit to challenge estimates of the board by injunction suit, the burden will rest upon the board to show each item as a positive "need" or an unescapable "obligation." We do not think that this district could operate practically or successfully under any such land owner surveillance or court dictation, and we therefore greatly doubt, at the outset, the intention of the Legislature to impose it.

In construing this statute, in view of the large discretionary powers conferred upon the board (Laws 1921, c.

39, § 2) and without which the corporation could not successfully operate, we do not think we are bound to that strictness which applies when determining the powers of municipal corporations. See Crawford v. Imperial Irrigation Dist., 200 Cal. 318, 253 P. 726.

The amount in question is clearly an "obligation" and a "need" *for* 1928 in the sense that it is on account of and growing out of the necessary operations of 1928. That meaning is present in the statutory expression. To exclude it is strict construction. It is a payment which, under the terms of the contract, may or may not "accrue" in 1928. In the opinion of the board, entertained when it made the estimate, if it was to succeed in its important negotiations for extension of time for repayment of construction costs, it must be prepared to have repayment of 1928 operation expense accrue during 1928.

If it be thought that the foregoing statutory expressions are so definite, considered apart from others and from surrounding circumstances, that a reasonably liberal construction is not sufficient to resolve the question in appellees' favor, there are other aids to construction to which appellees call attention and which have convinced us.

The expression "obligations and needs of the district for the ensuing year" has, as above mentioned, general application to all estimates. When stating specifically what is to be included in item 3, the expression is varied. The board is required to include therein its estimate "for such operation and maintenance *costs* for the ensuing year." Again, in the same section, certain credits and exemptions are required to be taken into consideration by the board "in determining the amount of money required to meet obligations, maintenance, operating and current *expenses* * * * for the ensuing year." Certainly the questioned estimate comes within these expressions.

Time of payment is a matter not expressly directed by the Legislature. It could not control it, since it had no authority over Congress or the Reclamation Service. It necessarily left it to the board to make the best terms it could, seeing to it that it was clothed with the powers

necessary to meet such requirements as were reasonably to be anticipated.

Section 21, which we have been considering, permits the board, under certain conditions, to exempt lands within the district from taxation. At the meeting at which it is to make its estimates, such exemptions are to be claimed, and, in so far as allowed, to be taken into consideration. The date of the meeting is to be fixed by standing order of the board not later than July 1. Clearly the exemptions to be taken into consideration by the board at its meeting of June 30, 1927, were because of the situation of those lands in 1928. They were to be exempted from the 1927 tax roll. What connection is there between exemptions for 1928 and operating expenses for 1927? If only 1927 expense and cost can go on the 1927 tax roll, why should 1928 exemptions be considered in estimating the amount necessary to be levied?

Another consideration is even more convincing. In 1920 and 1921 the costs of operation were actually repaid to the government currently. There is no finding to this effect, but the fact appears of record, is called to our attention by appellees, and not disputed by appellants. It must be, therefore, that the Legislature, in 1919 and 1921, contemplated a system of current payments. The statute must be construed as having authorized the board to place in its 1921 estimate, to be collected as taxes in the latter part of 1921 and in 1922, the costs and expenses of the 1922 operations. No change has occurred in the law, yet it is now claimed that the board may not estimate and levy in 1927 the costs and expenses of 1928 operations. This contention is based upon the evident fact that some time between 1921 and the present a concession was made by the Reclamation Service, enabling the district to postpone payment. A practice has grown up under which the district has been able to operate without money in hand to meet the expenses; but it is a mere concession—a mere practice. The statute does not contemplate it. The contract does not require it. Neither the Secretary of the Interior nor the board is bound by it, and Congress might at any time render its continuance impossible.

The board has evidently at some time taken advantage of this concession to dispense with the tax levy which the statute contemplated. As the trial court found, it fears longer to rely upon that concession and deems it necessary to be prepared for a withdrawal of it. It merely seeks to restore the former condition, a restoration which became inevitable when the original decision was made, in reliance on the concession, to omit a tax levy for the year. That decision involved an arrearage in operating expense and cost. We do not understand that government operation and maintenance is to be relied upon as a permanent policy. If not, the arrearage must some day develop into a deficit, requiring the levy in one year of the operating costs for two. We cannot doubt the power of the board to restore the situation. It might, perhaps as logically, be contended that it failed in its statutory duty when it made the original decision; but, considering the broad powers and discretion of the board, we think that both decisions are within them.

We conclude, therefore, that it was within the discretion of the board, as a matter of business policy, to determine whether it would pay its operating expenses currently, or whether it would take advantage of the privilege, which the present policy of the Reclamation Service extends, to lag one year behind. Particularly in this case, where the board deems it reasonably probable that the concession is to be withdrawn, we think the court without power to interfere.

■ Appellants further object to item 3 of the budget because it includes an estimate of $5,000 for "hydroelectric development" and $5,000 for "defense of water supply." As we understand, appellants do not question the power of the board to make preliminary research and investigation with a view to the ultimate establishment of hydroelectric plants, nor its power to take necessary steps for the protection of its water supply and rights, as against past or future encroachment. The point made is that expenditures for those purposes are not properly within the purposes expressed in item 3.

Counsel for appellees urge that the words "operation

and maintenance" are broad, of an indefinite meaning, and should be liberally construed. They cite Nampa & Meridian Irrigation Dist. v. Bond (D. C.) 283 F. 569; Id. (C. C. A.) 288 F. 541; Id., 268 U. S. 50, 45 S. Ct. 383, 69 L. Ed. 843. That case was different. The question there was whether a certain imposition was for construction or for operation and maintenance. In the case at bar the question is whether these expenditures come within item 3 or item 4. These two items represent two funds authorized by the Legislature, both of which are expense funds. Item 3, however, is strictly limited as to its purpose. The money, "when collected, shall be applied to the cost of operating and maintaining of the irrigation and drainage systems." Item 4 is strictly limited as to the amount. The tax, therefore, may not exceed 20 cents per acre. If this were a mere question of accounting or of bookkeeping, it would be of little importance; but it is not. It seems plain that item 4 is the legislative provision for expenditures such as these. To allow them to be included in item 3 would be to circumvent the statutory limitation upon the amount of tax which may be levied for such purposes. We think, therefore, that this contention of appellants should have been sustained.

To item 4, the "general fund," appellants object that on the "obligations and needs" side it includes estimates aggregating $4,900 for unauthorized purposes, and that on the "sources of revenue" side it excludes certain cash on hand. The contention is that, if the former were excluded and the latter included, it would appear that available resources were sufficient for the expenses of the ensuing year from that fund, so that no tax should be levied. As to the $4,900 of estimates, the trial court ruled in appellants' favor, and that matter is not before us.

The cash which the board excluded from the "sources of revenue" side is $10,000 which had been set aside by the board in 1926 as a building fund, and some $8,200 turned over to the district from the permanent reservoirs for irrigation purposes and the improvement of Rio Grande trust funds, pursuant to chapter 57 of the Laws of 1905. We do not doubt the power of the board to establish a building fund. Laws 1921, c. 39, § 2.

The purposes expressed in chapter 57, supra, are, generally, to pay the expense of organizing the Elephant Butte Water Users' Association and of making a contract with the United States for the construction of the Elephant Butte dam and reservoir. These purposes have long since been accomplished. A further purpose is the improvement of the Rio Grande in New Mexico and the increasing of its surface flow. If this sum was properly payable to the district for such purpose, it would seem that it would be the duty of the district to reserve and use it for that purpose, and that it would not be properly included as a source of revenue available for general current expenses. So we find no error in the judgment, except with respect to the two estimates aggregating $10,000 improperly included in item 3, but properly to have been included in item 4, subject to the statutory limitation as to the amount of levy. This error requires a reversal of the judgment, but does not require a new trial.

The cause will be remanded, with direction to the district court to modify the judgment in conformity with the views herein expressed.

It is so ordered.

BICKLEY, J., concurs.

PARKER, C. J. (dissenting). The following was written as the opinion of the court, to which the majority has failed to agree: This is a suit for an injunction brought by appellants against appellees to restrain them from levying a tax upon the lands within the Elephant Butte irrigation district for operation and maintenance of the irrigation and drainage system of that project. On June 30, 1927, the board of directors of said district made and formulated a budget of the estimated amount required for operation and maintenance of such system for the year 1928, in which is inserted an item of $205,000 for that purpose. In including this item the board failed to take into account cash on hand and other resources more than sufficient, it is alleged, to pay the entire cost of operation and maintenance for the year 1928. This was plainly an endeavor on the part of the board to accumulate a fund

not required for operation and maintenance, but to be kept in reserve. The theory of the members of the board was that it was desirable to secure an extension of time from 20 to 40 years for the repayment to the United States of the construction cost of the Elephant Butte dam and reservoir, and that it was possible, in that event, that the Secretary of the Interior might demand a repayment of the operation and maintenance expense during the same year in which they accrued, instead of the succeeding year as had theretofore been the established practice. The contract between the district and the government makes no specific provision as to the time when the operation and maintenance costs are to become due and payable, but section 6 of the Reclamation Extension Act (Act of August 13, 1914, 38 Stat. 686 [43 USCA §§ 493-497]), referred to in the contract, provides that such charges shall become due and payable on the date fixed by the Secretary of the Interior. It is argued, therefore, by appellees that the Secretary of the Interior might fix the date for payment in the same year in which the service was to be performed by the United States, or might fix a later date in his discretion, and that, therefore, the board had a right, and it was its duty, to anticipate such contingency and to accumulate a surplus for that purpose. The fact remains, however, that the Secretary of the Interior had not, on June 30, 1927, when the estimate and budget was made up, fixed a date for payment earlier or different from what had been the practice theretofore, or any date at all. It may have been, and probably was, wise and in accordance with good business principles for the board, if they had the power, to thus anticipate possibilities so as to avoid all danger of penalties for failure to pay the United States the operation and maintenance charges when demanded. On the other hand, the interests of the farmers and water users were to be compelled to pay as little as possible each year out of their incomes from the farms.

But be that as it may, no matter what the powers of the Secretary of the Interior are, and no matter what the terms of the contract of the district with the United States are, the question is whether, under the statutes of the state, the board had power to make and promulgate this

estimate and budget and thus subject the lands in the district to this taxation. At the time of this estimate and budget the Secretary of the Interior had made no demand on the district for the 1928 operation and maintenance charge. All that was before the board from that source was what is termed "public notice" from the Secretary of the Interior, dated March 25, 1927, in which it was stated:

"Notice is hereby given that the estimated cost of operating and maintaining that portion of the project, irrigation, and drainage system which is utilized for the benefit of New Mexico lands for the irrigation season of 1927, including all proper overhead and other general charges, is $195,000, which amount, or such part as is the actual cost for the calendar year 1927, the district shall pay to the United States in two equal payments, due March 1, and September 1, 1928."

A three months' period of grace is also allowed upon each one-half of such payment. It thus appears that, so far as the Secretary of the Interior was concerned, he was dealing with the 1927 payment only, and he was not concerned in any way with the 1928 payment. The 1928 payment, then, was not a need or a necessity of the board for which they might resort to taxation of the lands of the district. While the district by the contract is liable for operation and maintenance charges of the government, these charges are not due until demanded by the Secretary of the Interior; in fact, we find it difficult to understand how the Secretary of the Interior could reasonably demand these charges in advance or even during the current year when the service is rendered, knowing, as he must, the laws of the state and the means and ability of the district to raise money to taxation, and the time required to collect the same. It is upon such knowledge, no doubt, that he has pursued his present policy of estimating these costs and charges early in the year and demanding the payment thereof in the following year, thus enabling the district to provide money by means of taxation. In this connection, it is to be remembered, that our legislation was formulated largely under the supervison of the Reclamation Service and in such form as to suit it, and for that reason alone there would seem to arise a moral obligation upon the part of the Secretary of the Interior to administer the laws of Congress and the contract so as to comply

with the spirit of our laws, rather than to arbitrarily fix dates for payments at times when, under these laws, the district would be unable to perform and make the payments. Section 3 of chapter 39, Laws 1921, seems to us to be the controlling provision applicable to the powers of the board. It is as follows:

"The board of directors, on a date to be fixed by a standing order of the board, which shall not be later than July 1, of each year, shall estimate and determine the amount of funds required to meet the obligations and needs of the district for the ensuing year, together with such additional amount as may be necessary to meet any deficiency in the payment of expenses or obligations previously incurred by the district and remaining unpaid, for such of the following purposes as may be required by the activities of the district, to wit: * * *

"Item two. Any payment to become due under any contract with the United States, to secure which bonds have not been deposited with the United States, whether for the cost of irrigation or drainage system or for the operation and maintenance thereof, or both. * * *

"Item three. The portion of the expenses of operation and maintenance of the irrigation and drainage systems to be collected by tax assessment and levy, including funds required to meet obligations as provided in section 5 hereof. This portion shall not be less than one-fourth, nor more than two-thirds of the estimate for such operation and maintenance costs for the ensuing year, and shall be determined by the board of directors of said district from year to year, and the said portion of said operation and maintenance expenses so collected by tax assessment and levy, shall be collected from all lands of the district, whether irrigated or not except such lands as may be exempted from taxation by the terms of this act, and the same, when collected, shall be applied to the cost of operating and maintaining of the irrigation and drainage systems. The remainder of said estimated amount shall be paid by the parties actually using said systems and water for irrigation or other purposes, in accordance with the terms of their contract for water."

We cannot see how, under this statute, the board has power to raise money by taxation for any obligation not yet due or for any need not shown to exist. While the obligation to the government exists it is not yet due, and therefore not properly taken into account in fixing the budget. Counsel for the appellees seek to justify the action of the board under the general powers granted in section 2, c. 39, Laws 1921, and elsewhere in the statutes. But we regard such general powers and discretion restrained by the positive provisions of item 3 above quoted. While it is true this legislation should receive a liberal

interpretation in favor of the powers of the board, it being really a business and administrative corporation, not hampered by some of the rules in regard to municipal corporations, still it is bound to observe the restrictions placed upon it by law and must not assume a power not possessed by it.

As to the amount of such proposed tax which should be enjoined, we are not in a position to say from the record. The most we can do is to declare the principle which is to govern the board. Of course, the balance due the government for 1927 must be paid out of the funds on hand. While ordinarily uncollected taxes, accounts receivable, or other items of that character are not to be considered a surplus on hand, in a case like this where the board itself has listed such items as available resources and assets, it seems that they may be considered as such in determining the amount, if any, for which a tax may be laid by the board.

In this connection it is to be noted that appellants object to two items in the budget, one of $5,000 for hydroelectric development, and one of $5,000 for defense of water supply. We consider the objection to these two items by appellants as well taken. At first we were inclined to doubt this, for the reason that under section 1 of chapter 20, Laws 1919, the board is expressly given authority to construct, operate, and control plants for the generation, distribution, sale, and lease of electric energy. As to the second item, we were inclined to hold that under the general powers of the board and its discretion and duty to look after the welfare of the district it might expend from these funds money to investigate and stop, if possible, the encroachments of the state of Colorado upon our water supply at the headwaters of the Rio Grande in Colorado. The board undoubtedly has power to engage in both enterprises, but in item 3 of section 3 of chapter 39, Laws 1921, the moneys raised by taxation under said section are specifically required to be applied "to the cost of operating and maintaining of the irrigation and drainage systems." The moneys, therefore, for the purpose mentioned, must be provided in some other way, and cannot be paid out of the operation and maintenance fund.

It follows that the board should be enjoined from causing the lands of the district to be taxed in 1927 for operation and·maintenance, except in such sum, if any, as might be required to pay the amount due the government for operation and maintenance in 1927.

2. A second estimate and budget was made by the board June 30, 1927, for the general fund. This estimate and budget was entirely within the powers of the board under item 4 of section 3, c. 39, Laws 1921. This general fund is for the general running expenses of the district, aside from operation and maintenance. The district court disallowed three items in this budget amounting to $4,900, from which action no appeal has been taken. The principal difference between the parties is in regard to two items of $8,207.37 and $10,000, respectively. Both of these sums were on hand in cash at the time the budget was made out. Appellants argue that the item of $10,-000, which was set aside by the board in 1926 as a building fund, could not be set aside and held in reserve. We do not so understand the matter. By section 2 of chapter 39, Laws 1921, the board is expressly authorized to construct or purchase property necessary for the use of the district. A suitable building necessary or proper for the use of the board is clearly within the statute and it is certainly within the general powers of the board to determine just when the building shall be constructed or the property acquired.

In regard to the item of $8,207.37, it is to be said that it is a fund appropriated by the Legislature for two purposes, by chapter 57, Laws 1905, namely: To pay the expense of organizing the Elephant Butte Water Users' Association and the making of a contract with the United States to construct the Elephant Butte dam and reservoir; and to improve the Rio Grande in New Mexico and increase its surface flow. The first of these purposes has long since been accomplished and the balance of the funds must be devoted to the purpose for which they were appropriated and are not available for the general fund of the district. The objection of appellants, therefore, cannot be sustained.

It follows from the foregoing that the judgment is erroneous and should be reversed, and the cause remanded, with directions to proceed in accordance herewith.

For the reasons stated, I am compelled to dissent from the opinion of the majority.

ON MOTION FOR REHEARING

WATSON, J. It is contended that we erred in giving liberal construction to the statutory language "obligations and needs" and "payments accruing." The argument is that taxation and revenue laws must be strictly construed; that a tax is not to be sustained unless the legal right to impose it is expressed in or clearly to be implied from the statute; that the board of trustees, in order to provide funds to carry on the business of the district, has been vested with the power of taxation; the revenue laws of the state "for the assessment, levying and collecton of taxes on real estate for county purposes" having been made applicable. Laws 1919, c. 20, § 25.

We do not think that this is the real principle here involved. The power to impose the tax is not in question. It is apparent and conceded. The question is whether it should be levied in 1927 or postponed until 1928. Shall the board be compelled to take advantage of a credit it now enjoys, or may it pay as it goes? This is not a question of taxing power and does not involve construction of a revenue law. It involves the corporate powers. Considering those powers, as specified in the statute, and considering the purposes of the act and the nature of the business placed in charge of the board of directors, we cannot doubt that the question stated is one of policy, committed by the Legislature to the discretion of the board; nor do we think that we construed the statutory phrase with too great liberality.

We have no doubt of the correctness of appellants' contention that the "obligations and needs" to be included in the budget are limited to those of the "ensuing year." We quite agree that the board is not given the power to accumulate a surplus. But we cannot regard as a surplus that which is actually owed and is payable on demand.

Appellants urged at the original hearing, and again urge, that, if the $205,000, estimated cost of operation and maintenance for 1928, be omitted from consideration, the cash on hand and the estimated resources would suffice for 1928 needs and obligations without a tax levy. Not having adopted the hypothesis, we could see no reason to consider the resulting conclusion; nor do we now. Including the disputed item, it is not to be doubted that a levy is required. It does appear, however, from a finding made, that the board's estimate of cash on hand December 31, 1927, was about $10,000 too low. On the other hand, the budget was made to balance by including on the "source of revenue" side some $70,000 of delinquent assessment and some $4,800 of fixed assets. The latter were clearly not sources of revenue, and the former only to the extent that there was a reasonable prospect of realizing upon them during the year. We do not feel justified, therefore, in modifying the judgment on account of the error as to available cash.

Appellants contend that the record shows that, as to the general fund, the cash on hand and sources of revenue were sufficient to meet the needs and obligations without any tax levy, even though the $8,200 turned over from the permanent reservoir for irrigation purposes and the improvement of Rio Grande trust funds be excluded. The evidence does not, in our judgment, sustain this contention. After carefully reconsidering the evidence and the findings, we still think that the necessity of a tax levy for the general fund depends upon whether the moneys just mentioned and the $10,000 reserved for building purposes are to be treated as available cash. We held that they were not.

It is now urged that, as to the building reserve, we were wrong; that to allow such a fund to be accumulated from year to year is merely to permit the building up of a surplus. The corporate power of the district to acquire or erect a building for its purposes is not questioned. Whether it may pay the cost thereof, or accumulate a reserve therefor, out of the general fund, must be determined according as we interpret Laws of 1921, c. 39, § 3. This is the pertinent language:

"Item four. Current and miscellaneous expenses, other than as above specified, and necessary to defray the expenses of maintaining the organization of the district and carrying out the purposes of this act, shall not aggregate more than twenty cents per acre."

 The acquirement or erection of a building is not a current expense. It might be contended that it is an investment of capital. Is it a miscellaneous expense? If not properly an expense of any kind, is it justified as carrying out a purpose of the act? If we were to hold with appellants on this point, it would not result in sustaining their contention that no levy was required. It would, however, render a smaller levy sufficient. The specific question was not called to the attention of the trial court by requested findings or conclusions, and was not directly ruled upon. We do not consider that the question has been exhausted, by any means, in the briefs and arguments submitted to us. The question is of minor importance, considering the much larger amounts involved in this case, and the importance of a speedy determination of the main question as to whether the present levies may stand. For these reasons, we have concluded that it would be better to reserve the question for further determination. We overrule that objection for the purposes of this decision only. Our former expression as to the board's power to create the building reserve is withdrawn.

The motion for rehearing will therefore be denied. The former disposition of the cause is adhered to. The former opinion is adhered to, except as herein modified.

BICKLEY, J., Concurs.

PARKER, C. J., dissents.