STATE EX REL. KUNZ, Respondent, vs. WENDT, City Comptroller, and another, Appellants, and five other cases.

*April 9—April 27, 1937.*

12

For the appellants there were briefs by *Walter J. Mattison,* city attorney, *Charles W. Babcock,* first assistant city attorney, and *Ronold A. Drechsler* and *Harry J. Burczyk,* assistant city attorneys, and oral argument by *Mr. Drechsler, Mr. Babcock,* and *Mr. Burczyk.*

For the respondents there was a brief by *Max Raskin, Wm. F. Quick, H. A. Kovenock, Gene L. Green,* and *Willard A. Bowman,* all of Milwaukee, and oral argument by *Mr. Kovenock, Mr. Quick,* and *Mr. Green.*

NELSON, J.   The facts are not in dispute.   On May 8, 1911, the plaintiff Reinhard Kunz was duly appointed chief examiner of the board of engineer examiners of the city of Milwaukee, which position was changed on February 1, 1926, to that of chief engineer and supervising inspector, department of safety engineering.

On June 26, 1933, the plaintiff Max Grass was duly appointed a member of the board of fire and police commissioners of the city of Milwaukee for a term expiring the second Monday of July, 1938.

On September 19, 1932, the plaintiff John Banachowicz was duly appointed a member of the board of fire and police commissioners of the city of Milwaukee for the term expiring the second Monday of July, 1937.

On June 30, 1936, the plaintiff Charles D. Boyd was duly appointed a member of the city service commission of the city

of Milwaukee for the term expiring the first Monday of July, 1937.

On December 7, 1936, the plaintiff Herbert G. Kuechle was duly appointed a member of the board of fire and police commissioners of the city of Milwaukee for a term expiring the second Monday of July, 1941.

On June 25, 1934, the plaintiff Antoinette V. Jackowska-Peterson was appointed a member of the city service commission of the city of Milwaukee for a term expiring the first Monday of July, 1939.

Each of the plaintiffs duly qualified and thereafter performed the duties of their respective offices. Each of the plaintiffs was paid a salary by the city of Milwaukee up to the time that this controversy arose. On October 26, 1936, the common council of the city of Milwaukee passed a charter ordinance which, in terms, elected that so much of sec. 17.23 (1) (a) of the Wisconsin Statutes as relates to the filling of vacancies in the offices of aldermen in cities of the first class shall not apply to the city of Milwaukee. Said ordinance was published on November 4, 1936.

A movement was thereafter instituted, apparently by those who were opposed to the ordinance, pursuant to the provisions of sec. 66.01, Stats., to have the ordinance submitted to a referendum of the electors. During the month of November or December, 1936, each of the plaintiffs circulated a petition or petitions asking for a referendum on the ordinance. When the petitions were filed with the city clerk he discovered that the plaintiffs had circulated some of them. He felt it his duty to call the matter to the attention of the defendant, Wendt. He accordingly wrote to him and called to his attention the provisions of sec. 10.43 (2). He also stated that he had been advised by the city attorney's office that the office of any city official who circulates such a petition becomes automatically vacated. On January 15, 1937, the defendant Wendt wrote to the several plaintiffs, and stated that he had

been informed by the city clerk that they had participated in the circulation of the petition asking for a referendum vote on the charter ordinance, that he could not safely countersign the pay rolls as to them, and invited each of them to start a *mandamus* action to the end that the controversy might be determined. The court found the facts substantially as stated, and concluded that the plaintiffs had violated no law in circulating the petitions; that circulating such petitions did not create a forfeiture of or vacancy in their respective offices; that there was no valid basis for a claim of forfeiture of office; that it was the duty of the defendant as comptroller to countersign the pay rolls containing the plaintiffs' names, and to prepare and deliver to the plaintiffs the usual vouchers enabling them to obtain the amounts thereof from the city treasurer; that there was no discretion in the defendant Wendt, as comptroller, to refuse to countersign said pay rolls; and that the plaintiffs were entitled to peremptory writs of *mandamus* commanding and enjoining the defendant Wendt to countersign the pay rolls and to prepare and issue to the plaintiffs the regularly issued salary vouchers.

The question which controls this controversy is whether the following prohibition and ·forfeiture-of-office clause contained in sec. 10.43 (2), Stats., to wit:

"Said petition shall not be circulated by any member of the common council nor by any other city officer; and the office of any officer, violating this provision shall thereby be made vacant,"

was incorporated into sec. 66.01 (5) by the following language:

"Said petition and the proceedings for its submission shall be governed by subsections (2) to (5) of section 10.43."

The defendants contend that it was and the plaintiffs contend that it was not.

Sec. 10.43 (1), Stats., provides for direct legislation by the electors of a city, who may proceed by petition and re-

quest that a proposed ordinance or resolution be adopted without alteration by the common council or be referred without alteration to a vote of the electors. Sub. (2) prohibits the circulation of any such petition by a member of the common council or by any other officer upon pain of having his office made vacant, and further provides that the preparation of such petition shall be governed as to the use of more than a single piece of paper, the dates of signatures, the places of residence of signers, and the verification thereof, by the provisions of sec. 5.26, so far as applicable. Sub. (3) provides that the city clerk shall determine by careful examination the sufficiency or insufficiency of the petition, and shall state and certify his finding and that in case the petition is found insufficient, to permit its amendment by the obtaining of additional signatures or otherwise. Sub. (4) provides for the passage of the ordinance by the common council or the submission of it to the electors of the city. Sub. (5) provides for the publication by the city clerk of the ordinance or resolution prior to the submission to the electors. Sub. (6) provides when such an ordinance or resolution shall take effect, when and how it may be repealed, and that it shall be published within ten days after the election.

Sec. 66.01, Stats., was enacted subsequent to the adoption of sec. 3, art. XI, of the constitution of this state, and relates to the adoption of charter ordinances by cities and villages. Sub. (2) (a) defines a "charter ordinance," the manner of its adoption by a two-thirds vote of the members-elect of the legislative body of such city or village, subject to the referendum therein provided for. Sub. (2) (b) provides that every charter ordinance which amends or repeals the whole or any part of a city or village charter, shall designate specifically the portion of the charter so amended or repealed, and every charter ordinance which makes the election mentioned in sub. (4) shall designate specifically each enactment of the legislature or portion thereof made inapplicable to such city or

village by the election mentioned in sub. (4). Sub. (5) provides in part:

"But such ordinance shall not take effect until sixty days after its passage and publication. If within such sixty days a petition signed by a number of electors of the city or village equal to not less than seven per cent of the votes cast therein for governor at the last general election shall be filed in the office of the clerk of said city or village demanding that such ordinance be submitted to a vote of the electors it shall not take effect until submitted to a referendum and approved by a majority of the electors voting thereon.· Said petition and the proceedings for its submission shall be governed by subsections (2) to (5) of section 10.43."

Sub. (6) provides:

"Any charter ordinance may be initiated in the manner. provided in subsections (1) to (5) of section 10.43, but alternate adoption thereof by the legislative body .shall be subject to referendum as provided in subsection (5) of this section."

As before stated, this controversy hinges upon the following language contained in sec. 66.01 (5):

"Said petition and the proceedings for its submission shall be governed by subsections (2) to (5) of section 10.43."

The precise question for determination is: What did the legislature intend by the language "petition and the proceedings for its submission?" The words, "said petition," obviously refer to the petition that may be filed with the city or village clerk within sixty days after the passage and publication of a charter ordinance. The word "petition," as used in this statute, means a formal written request addressed to an official or organized body having power to grant it, in other words, the· completed document containing the petitioners' request or demand, the names of the signers thereto, their residences, dates of signing, and the verification of the one who circulated the same. It is our opinion that the legisla-

ture so used the word "petition" and did not intend to prohibit its circulation by members of the common council or by other officers of the city. Had the legislature intended to incorporate all of sub. (2) of sec. 10.43 into sec. 66.01 (5), it would have been a simple matter so to do. It could have accomplished the same thing by enacting that "said petition, *its circulation* and the proccedings for its submission shall be governed," etc. This, however, the legislature did not do. The language, "proceedings for its submission," in our opinion, can relate only to the proceedings that must be followed subsequent to the filing of the petitions, such as the examination of them by the clerk for the purpose of determining their sufficiency or insufficiency, the amendment thereof if insufficient, by obtaining additional signatures, the publication of the charter ordinance prior to the election in daily or weekly newspapers, and finally the submission thereof to the electors at a regular or special election. These clearly constitute "proceedings for its submission" of a charter ordinance to the electors upon the filing of referendum petitions so demanding. It would require an unreasonable stretch of the language "proceedings for its submission" to include therein the circulation of the petitions which must occur prior to the filing of the petitions with the city or village clerk. This conclusion seems obviously sound when the language of sec. 66.01 (6), which follows immediately after the language construed, is considered.

"Any charter ordinance may be initiated in the manner provided in subsections (1) to (5) of section 10.43. . . ."

The legislature, by such language, seems clearly to have intended that when a charter ordinance is sought to be initiated under sec. 66.01, it must be done *"in the manner* provided in subsections (1) to (5) of section 10.43." It is clear from that language that the legislature considerately intended that petitions to initiate charter ordinances, should

not be circulated by any member of the common council or by any other city officer.

While we deem it unnecessary to invoke the established law with respect to incorporating parts of a former law into a new statute, in support of our conclusion, it may be well to state it. In *State ex rel. Bancroft v. Frear,* 144 Wis. 79, 94, 95, 128 N. W. 1068, it was said:

"Where the attempt is made to incorporate parts of a former law into one that is being presently made, the language used should be such as to indicate with a reasonable degree of certainty what was in the legislative mind. A careful and intelligent reading of the two acts should be sufficient to indicate to the reader what parts of the old law were applicable to and were incorporated in the new. People are obliged to obey the laws, and in order that they may do so they should be put in a position where they can ascertain what they are. . . ."

The rule is thus stated in 25 R. C. L. pp. 907, 908, § 160:

"A code or compilation of laws need not be embodied in the act adopting it; a reference in such act to the code or compilation adopted is sufficient. It is, however, reasonable to suppose that when the legislature undertakes to legislate specifically on a subject it does so fully, and it cannot be deemed to have incorporated into the law parts of a former law unless the language employed is such as to indicate with a reasonable degree of certainty that that was the legislative intention."

and in 59 C. J. pp. 1059, 1060, § 624:

"Where an attempt is made to incorporate parts of a former law into a new statute, the language used should indicate with reasonable certainty what was in the legislative mind. . . ."

In view of the conclusion reached, we deem it unnecessary to prolong this opinion by recounting the legislative history of sec. 66.01 and particularly relating to the language herein construed. It sheds considerable light on the question and, in our opinion, clearly tends to support our conclusions.

We do not reach the other questions raised in the briefs as they relate to questions which would have to be determined in case we held that the prohibition and forfeiture provisions of sec. 10.43 were applicable to the plaintiffs in circulating petitions for a referendum on the charter ordinance.

*By the Court.*—The mandate in each of the actions is, judgment affirmed.