In re Organization of Town of Spread Eagle: Nelson and others, Respondents, v. Town of Florence and others, Appellants.*

*June 6—June 28, 1963.*

* Motion for rehearing denied, with $25 costs, on October 1, 1963.

488

For the appellants there was a brief by *Allen C. Wittkopf* of Florence, for Witynski and others, and by *Walter Dalla-Grana* of Florence, for the town of Florence, and oral argument by *Mr. DallaGrana.*

For the respondents there was a brief by *Emmet Mc-Carthy* of Marinette, and *Irving W. Smith, Sr.,* of Niagara, and oral argument by *Mr. McCarthy.*

HALLOWS, J. Apparently our former opinion was misunderstood or the parties did not agree "the record is not clear as to who are electors and who are resident freeholders" as defined in the opinion. Upon the petitioners' motion to find the original petition as filed met the requirements of sec. 60.06, Stats. 1959, and to implement and effectuate the mandate, the trial court heard arguments of counsel, had the benefit of briefs, and made its findings. The testimony in the record is the same on this appeal as on the former one and it is argued by both parties the record is sufficiently clear to establish their respective positions. The objectors

argue *inter alia* that the area does not contain 150 resident freeholders as defined by this court, that the names of eight resident-freeholder signers should be stricken from the petition and that there are more than 190 electors. The petitioners contend the statutory requirements have been met and the trial court's findings are supported by the great weight of the evidence.

We have on this appeal again reviewed the record and cannot sustain the finding of the trial court that the petition meets the requirements of the statute. As sec. 60.06, Stats., existed in 1959,[1] it provided among other things that a petition for the organization of a town must have at least 150 resident freeholders, at least 80 of whom are electors who have resided within such territory for at least one year prior to the verification of the petition, and that the petition be signed by a majority of the electors and a majority of the resident freeholders of the proposed town.

The petition does not designate which of the 105 signers are electors and which are resident freeholders, or both. The petitioners state in their brief the petition contained a list of resident freeholders numbering 161. This is obviously an erroneous statement as the petition contains no such list. At the trial, Exhibit 5 was admitted containing a list of 161 freeholders. The parties stipulated the persons listed were freeholders but not that they were residents. Thus the petitioners were put to their proof as to residency. The only evidence in the record as to their residency is the testimony of Louis Nelson, one of the petitioners, to the effect he knew all the 161 persons and they were all residents. It is argued this testimony is sufficient to prove the fact of

---

[1] Sec. 60.06 (1) was amended by ch. 457, Laws of 1961, to require 300 resident freeholders, at least 150 of whom are electors who have resided within the territory for at least one year prior to the verification of the petition. This version of the section is not applicable to this case.

residency and the witness was using the word "residents" in the sense defined by this court on the first appeal. This testimony was given prior to the first appeal and we find nothing in the record which proves the witness was using the word "residents" in the sense as defined by this court.

Prior to the first appeal, the referee, in applying the erroneous definition of "resident" given him by the trial court, found 211 resident freeholders, but he pointed out that if he construed "residence" in the sense of a place which a person made his principal seat of affairs and interest and as constituting something more than a temporary sojourn—a concept similar for the purpose of this appeal to this court's construction of the word "residence" as used in the statute—then there would be less than 150 persons who made the proposed town their permanent home or residence, and the petition would fail. Nelson's testimony, devoid of any reference to the intention of the freeholders "to make that place his permanent residence" and his use of the word "resident freeholder" in a conclusional sense, must be read in the light of this statement by the referee. In doing so we cannot find there were 161 freeholders in the proposed new town who could qualify as residents as defined by this court on the first appeal. The petitioners have not met their burden of proving the proposed new town contains the statutory requirement of 150 resident freeholders.

On the first appeal we did not pass upon the question whether eight of the signers could not be considered as having signed a proper petition. Comparing the names of the 105 signers on the petition with the 161 freeholders on Exhibit 5, we find 87 signers are listed on this exhibit. Accepting arguendo the finding of the trial court that there are 161 resident freeholders, the statutory requirement of a majority would be met by 81 signers. The 87 signers found by the trial court meet this requirement if they signed a

proper petition. Louis Nelson testified that incomplete petitions were mailed to these eight petitioners for signing in that Exhibits A and B, containing the description of the property constituting the proposed town and the list of electors, were not then a part of the petition. The record shows a separate petition was signed by Celia Drevdahl and Elmer R. Drevdahl on January 16, 1961, a separate petition signed by Mildred Davidson and Lawrence J. Davidson on January 7, 1961, a separate petition signed by Harry C. Larson and Mrs. Victor Larson on January 9, 1961, and one by Henry G. Day and Minnie Day on January 7, 1961. The verifications of these four petitions by Leo J. Thibault, E. C. Musgrave, and John J. Weber were subscribed and sworn to on the 28th day of January, 1961.

These incomplete petitions and others were attached together with Exhibits A and B and filed as the petition in this case. Sec. 60.06 (2), Stats., requires the petition to be signed showing the existence of the facts entitling such territory to be organized as a town and containing an accurate description of such territory and the names of the electors. What these eight persons signed was an incomplete petition and in legal contemplation not a petition complying with the statutes. A petition to form a new town by its very nature is a formal document, *State ex rel. Kunz v. Wendt* (1937), 225 Wis. 10, 273 N. W. 72, and the formalities imposed by the statute under which the petition is made must be followed. *Hunt v. Rolloff* (1947), 224 Minn., 323, 28 N. W. (2d) 771. For a somewhat-analogous view concerning a political act but involving a petition for annexation, see *Brown Deer v. Milwaukee* (1962), 16 Wis. (2d) 206, 114 N. W. (2d) 493. The referee held the petition need not be complete where circulated and signed if it satisfied the statute when filed. It was error by the trial court to affirm this ruling.

While it is contended all eight signatures should be disregarded, we can find only seven of them listed on Exhibit 5 as resident freeholders. This is immaterial because by reducing the 87 resident-freeholder signers by seven, the petition falls one short of the majority of the resident freeholders required to sign the petition. This is a fatal defect and requires the order appealed from be reversed and the petition dismissed.

The other issues raised by the parties have been considered, but in view of our holding it is unnecessary to discuss them.

*By the Court.*—The order is reversed, with directions to dismiss the proceeding on its merits.

